UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LANGFORD,

    Plaintiff,

v.

MUZIRMAN PRIMA, ET AL,

    Defendants.

_____/

Case No. 17-cv-11862

HONORABLE. VICTORIA A. ROBERTS

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (Doc. # 18, Doc. # 24, Doc. # 31) AND DISMISSING COMPLAINT AGAINST DEFENDANTS NURSE UNKNOWN RICK AND UNKNOWN PERSON FROM THE BUREAU OF HEALTH CARE SERVICES**

Robert Langford ("Langford") brings this Prisoner Civil Rights claim against several defendants (collectively, "Defendants") under 42 U.S.C. § 1983 for violations of his First and Eighth Amendment rights. Langford claims that by inadequately treating his ingrown toenail, Defendants showed deliberate indifference in violation of the Eighth Amendment. Langford also claims that he received a misconduct ticket in retaliation for his decision not to allow a prison nurse to operate on his toenail, in violation of the First Amendment.

Three groups of Defendants filed separate motions to dismiss. After the Defendants filed their motions to dismiss, the Court ordered Langford to either file an amended complaint or respond to all three motions. Langford filed a response; only one reply brief was filed. No motions to dismiss were filed on behalf of Defendant Unknown Rick, a nurse, and an Unknown Person from the Bureau of Health Care Services ("Unknown Person").

1

For the reasons that follow, all three motions are **GRANTED**; Langford's claims are **DISMISSED WITH PREJUDICE** against all Defendants.

I. **BACKGROUND**

A. **Facts of the Case**

i. **Medical Treatment For Ingrown Toenail**

Langford alleges that on September 16, 2016, he requested medical attention for an ingrown toenail. Three days later, he was notified that he had an appointment to both have his toenail examined and to use the toenail clippers. He met with "Nurse Unknown Rick," who allowed him to use the toenail clippers. Nurse Rick said he would schedule Langford to see a doctor. Langford did not get notice of an appointment, so he sent another request on September 25, 2016 for an appointment, indicating he was in pain and had difficulty walking. In response to this request, he was scheduled to see Nurse Cynthia Brzyski ("Brzyski") on September 28, 2016. That appointment was canceled. He sent another request, which resulted in him seeing Nurse Lisa Wurmlinger ("Wurmlinger") on October 7, 2016; she indicated that she would schedule Langford to see a doctor. [Complaint, Pg. 6-7].

On October 14, 2016, Langford was seen by Nurse Practioner Prima Muzirman ("Muzirman"), who advised him that he should have the toenail removed. Langford asked Muzirman if she had such experience; she said she had never removed a toenail. Langford told Muzirman that he preferred a doctor to remove his toenail. *Id.* at 7.

Between November 2016 and February 2017, Langford alleges that he made several requests concerning his toenail and went to several appointments, only to be

2

told they were cancelled when he arrived. Notably, he says he sent a request stating that he needed to see a physician to remove his toenail because he was not going to let an inexperienced medical provider perform the procedure. He admits he declined a few appointments to have a medical provider assess his toenail or to use the toenail clippers, either because his toenail was already assessed, or because he did not need to use clippers. *Id.* at 7-8.

After sending a letter inquiring about an appointment for his toenail, Langford alleges receiving a letter from an Unknown Person on February 8, 2017. That letter indicated that they were looking into his concern. *Id.* at 8.

### ii. Prisoner Misconduct Ticket

On January 25, 2017, Langford alleges that he was given a pass to see Muzirman, who examined Langford's ingrown toenail and said it was due to a fungus. He asked her why she kept calling him to see her when he was not going to let her perform any procedures on his toenail. Langford alleges that Muzirman became angry, and told him to get out of her office. Muzirman told a custody officer that Langford yelled at her, and the custody officer – according to Langford – told Muzirman that Langford could be written up for insolence. Langford admits he did raise his voice, but he did not threaten or intimidate Muzirman. He told the custody officer that the only issue was that he did not want Muzirman to work on his toenail. *Id.* at 9-10.

The next day, the control center issued Langford a Class II misconduct for insolence. Langford unsuccessfully appealed the ticket. Langford later pled guilty to the misconduct. *Id.*

### iii. Langford's Grievances For Ingrown Toenail

Langford alleges that on September 30, 2016, he filed a Step I grievance stating that he had been seen by a nurse for his ingrown toenail, but had not been seen by a "medical provider." On October 21, 2016, Langford received a Step I grievance response from Nurse K. Hamblin ("Hamblin"), which was reviewed by Nurse C. Ives ("Ives"), denying his grievance. *Id.* at 8.

On October 26, 2016, Langford says he filed a Step II grievance appeal, indicating that although Muzirman offered to remove his toenail, he refused and said he wanted a physician to perform the procedure. Langford claims he received the Step II grievance appeal back with no receipt. He then filed a Step III grievance appeal on October 29, 2016, stating the same issues as set forth in his Step II grievance appeal. He also indicated that he never received a response to his Step II appeal. *Id.* at 8-9.

Langford allegedly received a letter from the office of legal affairs, dated October 31, 2016, stating that he did not included his Step II response as required, or provide a reason why it was not included. He responded to this letter saying that he did not receive a response to his Step II appeal, which is why he did not include a copy of it in his Step III appeal. Langford sent another letter to Richard D. Russell ("Russell") in the grievance section of the office of legal affairs, stating he had sent a Step III appeal, but had not received a response to it. He allegedly never received a response to that letter. *Id.* at 9.

## II. LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

A complaint "must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citations omitted). Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; see also *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted).

## III. ANALYSIS

### A. The Court Need Not Address Exhaustion of Administrative Remedies

All Defendants argue that because Langford did not exhaust administrative remedies within the Michigan Department of Corrections ("MDOC"), his complaint should be dismissed without prejudice. The MDOC grievance procedure requires prisoners to file a Step I, Step II, and Step III grievance form. Defendants attach affidavits and grievance records to support their position that Langford did not exhaust through the required steps.

Langford argues that he attempted to exhaust MDOC procedures, but grievance appeals were returned to him without receipts or instructions. To support his position, Langford attaches carbon copies of his grievance forms, as well as letters he wrote to the grievance coordinator.

Under the Prisoner Litigation Reform Act, a prisoner cannot bring an action challenging his prison conditions unless he exhausts administrative remedies. 42 USC § 1997e(a). "This requirement is not jurisdictional; rather, exhaustion is an affirmative defense that must be pleaded and proved by the defendants." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). "In the event that a claim is, on its face, frivolous, malicious, [or] fails to state a claim upon which relief can be granted, … the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." 42 USC § 1997e(c)(2).

Due to the poor quality of the attachments, the Court cannot determine whether Langford properly exhausted remedies. Nevertheless, as explained in detail below,

6

Langford's deliberate indifference and retaliation claims are frivolous and can be dismissed on their merits, so "the Court need not consider whether [Langford's] claims are exhausted." *Laster v. Pramstaller*, 2011 U.S. Dist. LEXIS 84281, *6 (E.D. Mich. Feb. 24, 2011). *See also Williams v. Moore*, 34 Fed. Appx. 475, 476, (6th Cir. 2002) ("exhaustion does not need to be considered where the claim fails to state a claim upon which relief can be granted").

### B. Claims Dismissed Against Defendants Not Alleged to Have Been Personally Involved In The Alleged Violations

Langford requests money damages for alleged constitutional violations, suing Defendants in their individual capacity. Several Defendants argue that because Langford fails to allege their personal involvement in the facts underlying his constitutional violation, his claims against them should be dismissed. The Court agrees.

For Defendants to be held liable for alleged § 1983 violations, Langford has to allege "that they did more than play a passive role in the alleged violation…" *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998) "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Langford lists Defendants Sabrina Aiken ("Aiken"), Taylor Adams ("Adams"), and Albercook as defendants in the caption of his complaint, but fails to allege any facts about them in the complaint itself. Because Langford "must plead that each

7

Government-official defendant, through the official's own individual actions, has violated the Constitution," and failed to do so for Aiken, Adams, and Albercook, the claims against them are dismissed. *Iqbal*, 556 U.S. at 676.

Langford names two nurses, Brzyski and Wurmlinger, as Defendants. Langford does not allege that Bryzski took any action. Instead, he alleges that an appointment with Brzyski was scheduled and canceled. This does not even begin to suggest her personal involvement in the deprivation of Langford's civil rights. *Barren*, 152 F.3d at 1194. Langford alleges that Wurmlinger said she would schedule him to see a doctor concerning his ingrown toenail. Since Langford's case is based on an alleged lack of medical attention for his ingrown toenail, Wurmlinger's actions in furtherance of this medical attention would certainly not constitute personal involvement in denying him medical care. *Id.* The claims against nurses Brzyski and Wurmlinger are dismissed.

Some Defendants are alleged to have taken what would be considered passive roles in Langford's alleged constitutional violations. Defendants Hamlin, Ives, and Russell responded to grievance forms and letters from Langford. These actions do not rise to the level of involvement necessary to claim that they violated Langford's constitutional rights. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (concluding that the denial of administrative grievances do not constitute allegations that the defendants "directly participated, encouraged, authorized or acquiesced in the claimed" constitutional violations). Thus, the claims against Hamlin, Ives, and Russell are dismissed.

Although Langford alleges facts against the remaining Defendants, because his constitutional claims fail on their merits, they are dismissed.

### C. Langford's Allegations Do Not Constitute an Eighth Amendment Violation

Langford alleges that Defendants were deliberately indifferent to his medical needs concerning his ingrown toenail, in violation of his Eighth Amendment right against cruel and unusual punishment.

Two groups of Defendants argue that Langford's allegations do not support an Eighth Amendment violation. Wurmlinger, Brzyski, Hamblin, Ives, Russell, and Lee McRoberts argue that even if an ingrown toenail constitutes a sufficiently serious medical condition, Langford was not denied medical care. To the contrary, they say Langford refused medical care, which as a matter of law does not establish an Eighth Amendment claim. Similarly, Albercook and Muzirman argue that because Langford admits that he refused medical treatment, he fails to allege the requisite subjective component of a deliberate indifference claim.

A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (internal quotations and citations omitted). Second, "a prison official must have a sufficiently culpable state of mind." *Id.* (internal quotations and citations omitted). "In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety." *Id.* (internal quotations and citations omitted).

####    i.    An Ingrown Toenail Is Not A Serious Medical Need

A medical need is sufficiently serious if it has been diagnosed by a physician as mandating treatment, or if it is so obvious that even a layperson would easily recognize

9

the need for medical attention. *Whitfield v. Whalen*, 2009 U.S. Dist. LEXIS 127120, *7-9 (W.D. Mich. Jul. 20, 2009). Several courts have held that an ingrown toenail does not constitute a sufficient serious medical need. *See Boardley v. First Corr. Med.*, 2004 U.S. Dist. LEXIS 25918 *7 (D. Del. Dec. 21, 2004) (finding that a delay in performing surgery on an ingrown toenail does not amount to a serious injury as required by § 1983); *McKaye v. Toombs*, 1991 U.S. App. LEXIS 7043, *3 (6th Cir. 1991) (affirming a district court's adoption of a magistrate judge's recommendation that a prison nurse's refusal to provide immediate medical attention to an ingrown toenail did not constitute deliberate indifference to a serious medical need); *Hess v. Tulsa County Sheriff's Office*, 2009 U.S. Dist. LEXIS 36799, *6 (N.D. Okla. Apr. 27, 2009) ("the Court finds that an ingrown toenail is not sufficiently serious to satisfy the objective component."); *Marchwicz v. O'Mara*, 2011 U.S. Dist. LEXIS 132895 *10 (D.N.H. Nov. 16, 2011) ("the court is unable to find a single case in which an ingrown toenail was deemed by a federal court to constitute a 'serious medical need' in a § 1983 action asserting inadequate medical care"). As a matter of law, Langford fails to allege that his ingrown toenail is a serious medical need.

    **ii.**    **Prison Officials Did Not Act With Deliberate Indifference**

A prison official cannot be found liable for deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer* 511 U.S. at 837. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "[D]ifferences in

judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim." *Campbell v. Engelsgjerd*, 2008 U.S. Dist. LEXIS 113726, *15 (W.D. Mich. Aug. 29, 2009), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 74857 (W.D. Mich. Sept. 24, 2008).

Langford does not allege that he was denied medical care. Instead, he alleges that he saw Muzirman on two occasions, but refused to allow her to remove his toenail because he wanted a physician to do it. Further, he alleges that he did not attend several scheduled appointments because he believed that his toenail had already been assessed, or that he did not need to use toenail clippers. Langford clearly disagreed with the appropriate treatment for his ingrown toenail, and does not state enough facts to state a claim of deliberate indifference. *Id.*

"[Langford's] allegations about the treatment he received for an ingrown toenail do not state a claim for deliberate indifference to his serious medical needs under the Eighth [Amendment]." *Tucker v. Rudd*, 2017 U.S. Dist. LEXIS 56780, *5 (M.D. Tenn. Apr. 13, 2017).

Langford's deliberate indifference claim is dismissed.

### D. Langford's Allegations Do Not State A Claim For Retaliation

Langford alleges that Muzirman retaliated against him by writing him a misconduct ticket after he refused to allow her to remove his toenail. Defendants argue that this claim fails because refusal of medical treatment is not protected conduct under a First Amendment retaliation claim.

A retaliation claim consists of three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). A plaintiff has the burden to show that his protected conduct was a motivating factor behind the adverse action. *Id.* at 399.

Langford claims that he received the misconduct ticket in retaliation for because he refused medical treatment. However, refusing medical treatment is not protected conduct for the purposes of a First Amendment retaliation claim*. See Carter v. Ayala*, 2014 U.S. Dist. LEXIS 130395 *9-10 (W.D. Mich. Aug. 20, 2014) (finding that the right to refuse medical treatment is not protected conduct under a First Amendment retaliation claim, although it is protected conduct under the Fourteenth Amendment), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 129911.

Langford's retaliation claim is dismissed.

### E. Claims Against Nurse Rick and Unknown Person Are Dismissed

The Court can, on its own, dismiss a § 1983 action brought with respect to prison conditions if the Court finds the action is frivolous or fails to state a claim upon which relief can be granted. 42 USC § 1997e(c)(2). As detailed above, Langford fails to state a claim for deliberate indifference and retaliation. Thus, even though no motions were filed on behalf of Nurse Rick and Unknown Person, the Court will sua sponte dismiss Langford's claims against them.

## IV. CONCLUSION

Defendants' motions to dismiss are **GRANTED**. Langford's claims are **DISMISSED WITH PREJUDICE**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: February 1, 2018

---

The undersigned certifies that a copy of this document was served on the attorneys of record and Robert Langford by electronic means or U.S. Mail on February 1, 2018.

s/Linda Vertriest
Deputy Clerk

---